## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF FLORIDA

CRAIG CUNNINGHAM, individually and on behalf of a
class of all persons and entities similarly situated,

       Plaintiff,

vs.                                Case No. _____

YELLOWSTONE CAPITAL LLC, and
INTEGRITY CAPITAL SOLUTIONS, INC.

       Defendants.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.     Plaintiff Craig Cunningham brings this action under the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread

public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v.*

*Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2.     Mr. Cunningham alleges that Defendant Integrity Capital Solutions, Inc.

("Integrity Capital" or "Defendant") sent him and other putative class members prerecorded

telemarketing calls without his prior express written consent. They did so pursuant to an

agreement with Yellowstone Capital LLC ("Yellowstone") where they were hired to generate

new business, and did so with Yellowstone's knowledge that they would be telemarketing.

3.     Because the call to Mr. Cunningham was transmitted using technology capable of

generating thousands of similar calls per day, Mr. Cunningham sues on behalf of a proposed

nationwide class of other persons who received illegal telephone calls from Integrity Capital.

4.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.      Plaintiff Craig Cunningham resides in Tennessee.

6.      Defendant Yellowstone Capital, LLC is a New York based limited liability company that transacts business throughout the United States, including into this District.

7.      Defendant Integrity Capital Solutions, Inc. is a Florida corporation that has its principal office in this District in Deerfield Beach, FL.

## Jurisdiction & Venue

8.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, codified as 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

9.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 et seq.

10.      Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls and follow up calls to the Plaintiff occurred from this District, and several putative class members reside in this District. Venue is proper because a substantial part of property that is the subject of the action is situated in this District, including the automated dialing equipment used

2

by the Defendant. Finally, venue is proper under 28 U.S.C. § 1391(b)(1) because the defendant resides in this judicial district.

## TCPA Background

11.      In 1991, Congress enacted the TCPA[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

12.      The TCPA regulates the use of automated telephone equipment, or "autodialers."

13.      Specifically, Section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number absent an emergency or the prior express consent of the called party.

14.      According to findings by the FCC, the agency vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and the calls can be costly and inconvenient.

15.      The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

16.      On January 4, 2008, the FCC released a Declaratory Ruling where it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[3]

## Factual Allegations

17.      Plaintiff Cunningham is a "person" as defined by 47 U.S.C. § 153(39).

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*
[2] *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 (¶ 165) (2003).
[3] *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, Declaratory Ruling, 23 FCC Rcd 559, 564-65 (¶ 10) (2008) ("2008 FCC Declaratory Ruling").

**Calls from Integrity Capital**

18.     Between January 11, 2016 and continuing through March 28, 2016 the Plaintiff received multiple automated calls from Integrity Capital, including on the following dates:

    a.   January 11, 2016

    b.   January 14, 2016

    c.   January 22, 2016

    d.   January 27, 2016

    e.   February 3, 2016

    f.   February 11, 2016

    g.   February 15, 2016

    h.   March 2, 2016

    i.   March 14, 2016

    j.   March 21, 2016

    k.   March 25, 2016

    l.   March 28, 2016.

19.     During at least one of these "cold calls," the Plaintiff requested a copy of Integrity's Do Not Call policy, and did not receive one, which violates Section 227(c) of the TCPA, and 47 CFR 64.1200.

20.     The following facts indicate the calls were placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1):

    a.   The geographic location between the Plaintiff and the Defendant indicates that the calling was done through a nationwide *en masse* telemarketing campaign;

4

b.   On the calls from Integrity to the Plaintiff there was a distinctive click and pause before a live human operator came on the line;

21.     The Plaintiff was harmed by these calls because they were unwelcome intrusions on his privacy that occupied his telephone line from legitimate communications.

22.     Through both the scripted pitch and e-mail communications, Integrity Capital attempted to sell the Plaintiff Yellowstone's financing services.

23.     To verify this, the Plaintiff communicated with Integrity Capital and they provided a form contract that was a document from Yellowstone capital, and had been provided by Yellowstone Capital, to sell their goods and services. A copy of this contract is attached as Exhibit A.

**Calls from Yellowstone Capital**

24.     In April and May of 2016, the Plaintiff also received multiple automated calls from Yellowstone directly, including a pre-recorded call that Yellowstone commissioned on May 9, 2016.

25.     The following facts indicate the calls were placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1):

a.   The geographic location between the Plaintiff and the Defendant indicates that the calling was done through a nationwide *en masse* telemarketing campaign;

b.   One of the calls was made with a pre-recorded message;

c.   On the calls from Yellowstone to the Plaintiff there was a distinctive click and pause before a live human operator came on the line;

26.     During these calls, Yellowstone attempted to offer the Plaintiff its own goods or services.

27. The Plaintiff was harmed by these calls because they were unwelcome intrusions on his privacy that occupied his telephone line from legitimate communications.

**Yellowstone's Liability and its Arrangement with Integrity Capital**

28. Yellowstone is a "person," as defined by 47 U.S.C. § 153(39).

29. The Federal Communication Commission concurs that sellers such as Yellowstone may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

30. In the January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

31. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

32. Integrity Capital made the autodialed calls described herein "on behalf of" Yellowstone within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

33.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[4]

34.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

35.     The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call.  *Id.* at 6587 n. 107.

36.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46)

---

[4] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

37.     Yellowstone is directly liable for the Integrity Capital telemarketing calls because it:

a.     actively participated in those calls through the guidelines it required Integrity Capital to follow;

b.     issued quotations and applications wholly derived from Integrity Capital's calls, as it did with the Plaintiff.

38.     Yellowstone is also directly liable for the calls it made to the Plaintiff, as described above.

39.     Yellowstone requires third parties like Integrity Capital to represent the company to consumers, including non-customers.

40.     Yellowstone knowingly and actively accepted business that originated through the illegal telemarketing calls from Integrity Capital.

41.     Yellowstone maintains interim control over its agents' actions, both as to telemarketing and other activities by directing the content of their agents' advertising.

42.     Yellowstone had absolute control over whether, and under what circumstances, they issue an application to a prospective customer.

43.     Yellowstone was legally responsible for ensuring that Integrity Capital complied with the TCPA, even if Yellowstone did not themselves make the calls.

44.     Yellowstone knew or reasonably should have known that Integrity Capital was violating the TCPA on its behalf, and failed to take effective steps within their power to force the telemarketer to cease that conduct.

45.     Yellowstone gave their agents substantial power to affect their legal relations with third parties, including Integrity Capital and consumers.

46.     Integrity Capital transferred customer information, including the Plaintiff's information, directly to local insurance agents.  Integrity Capital has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.  Integrity Capital is an apparent agent of Yellowstone.

47.     By hiring Integrity Capital to make calls on behalf of its agents to generate sales leads, Yellowstone "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.  Similarly, by accepting these contacts, Integrity Capital "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Yellowstone, as described in the Restatement (Third) of Agency.  Integrity Capital is an agent of Yellowstone.

48.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Class Action Allegations

49.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of all other persons or entities similarly situated throughout the United States.

50.     The class of persons Plaintiff proposes to represent include:

CLASS 1:

> All persons within the United States who received a non-emergency telephone call from Integrity Capital placed to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice at any

time four years prior to the filing of the Complaint through the date of certification.

CLASS 2:

All persons within the United States who received a non-emergency telephone call from Yellowstone Capital placed to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice from January 29, 2015 through the date of certification.

51.     Excluded from the class are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

52.     The proposed class members are identifiable through phone records and phone number databases.

53.     The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

54.     Plaintiff is a member of the class, including both subclasses.

55.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to :

a.     Whether the Defendant used a pre-recorded message to send telemarketing calls;

b.     Whether the Defendant placed telemarketing calls without obtaining the recipients' valid prior express written consent;

c.     Whether the Defendant's violations of the TCPA were negligent, willful, or knowing; and

d.     Whether the Plaintiff and the class members are entitled to statutory damages because of the Defendant's actions.

56.     Plaintiff's claims are based on the same facts and legal theories, and therefore are typical of the claims of class members.

57.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58.     The actions of the Defendants are applicable to the class and to Plaintiff.

59.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

60.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

### Legal Claims

### FIRST COUNT

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. §  227 *ET SEQ.*

61.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth.

62.     The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

63.     Because of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for every call in violation of the statute, under 47 U.S.C. § 227(b)(3)(B).

64.     Plaintiff and Class members are also entitled to and seek injunctive relief prohibiting the Defendants' violation of the TCPA.

## SECOND COUNT

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

65.     Plaintiff incorporates by reference all other paragraphs as if fully stated.

66.     The foregoing acts and omissions of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

67.     Because of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class may treble damages of up to $1,500 for every call in violation of the statute, under 47 U.S.C. § 227(b)(3).

68.     Plaintiff and all Class members are also entitled to and seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants.

### Relief Sought

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A.      Injunctive relief prohibiting such violations of the TCPA by the Defendant;

B.      Because of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500 for every call that violated the TCPA;

C.      Because of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seek for themselves and each Class member $500 in statutory damages for every call that violated the TCPA;

D.      Because of Defendant's violations of 47 C.F.R. § 64.1200(c), Plaintiff Cunningham seeks for himself and the other Class members whose telephone numbers were called at least twice within any 12-month period despite being registered with the National Do Not Call Registry, up to $500 in statutory damages for every call that violated such regulations, or—where such regulations were willfully or knowingly violated—up to $1,500 for each and every call in violation;

E.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

F.      An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

G.      Such other relief as the Court deems just and proper.


**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


                                            Plaintiff,
                                            By Counsel,

                                            s/ Marc Weintraub
                                            Marc Weintraub (Fla. Bar No. 119976)
                                            Bailey & Glasser LLP
                                            360 Central Avenue, Suite 1500
                                            St. Petersburg, FL 33701
                                            (727) 894-6745
                                            (727) 894-2649 *facsimile*
                                            mweintraub@baileyglasser.com

Edward A. Broderick
Anthony Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA  02110
(508) 221-1510
ted@broderick-law.com
anthony@broderick-law.com
*Subject to Pro Hac Vice*

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net
*Subject to Pro Hac Vice*