# EXHIBIT A

# YELLOWSTONE CAPITAL LLC

## SECURED MERCHANT AGREEMENT

This Agreement, dated  March 11, 2016    , is between Yellowstone Capital, LLC ("YSC") and the merchant listed below ("the Merchant"):

Merchant Legal Name:  GRANITE ENTERPRISES, LLC

D/B/A:  GRANITE ENTERPRISES

Check One:   Corporation ☐   LLC ☐   LP ■   LLP ☐   Sole Prop ☐      EIN #: 80-0847135

Physical Address:  5543 EDMONDSON PIKE, NASHVILLE, TN 37211

Mailing Address:  5543 EDMONDSON PIKE, NASHVILLE, TN 37211

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to YSC (making YSC the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, the Specified Percentage (defined below) of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts") defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to YSC.

The Purchased Amount shall be paid to YSC by Merchant's irrevocably authorizing only ONE depositing account acceptable to YSC (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as YSC receives payment in full of the Purchased Amount. Merchant hereby authorizes YSC to ACH Debit the specified remittances from the merchant's bank account on a daily basis and will provide YSC with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by YSC remains in the account and will be held responsible for any fees incurred by YSC resulting from a rejected ACH attempt or an event of default. (See Appendix A). YSC is not responsible for any overdrafts or rejected transactions that may result from YSC's ACH debiting the specified amounts under the terms of this agreement. YSC may, upon Merchant's request, adjust the amount of any payment due under this Agreement at YSC's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between YSC and Merchant, upon the violation of any provision contained the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

| PURCHASE PRICE: | SPECIFIED PERCENTAGE: | PURCHASED AMOUNT: |
|---|---|---|
| 7,000.00 | 15% | 10,213.00 |

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT SECURITY AGREEMENT" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

FOR THE MERCHANT #1

By: _____
Name: CRAIG CUNNINGHAM
Title: OWNER
SSN: ▆▆▆-▆▆-5558

OWNER/GUARANTOR #1

By: _____
Name:
SSN:

FOR THE MERCHANT #2

By: _____
Name:
Title:
SSN:

OWNER/GUARANTOR #2

By: _____
Name:
SSN:

1

Rev. 1.27.16

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to pay this obligation and that the information provided herein and in all of YSC documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading,

Merchant shall be deemed in material breach of all agreements between Merchant and YSC and YSC shall be entitled to all remedies available under law. YSC may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to YSC. An investigative report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes YSC, its agents and representatives and any credit-reporting agency engaged by YSC, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to YSC as a consequence of this Agreement or for YSC's ability to determine Merchant's eligibility to enter into any future agreement with Company.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

Case 0:16-cv-62029-WPD   Document 1-1   Entered on FLSD Docket 08/23/2016   Page 3 of 15

Owner Initials:_____
Owner Initials:_____

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## I. TERMS OF ENROLLMENT IN PROGRAM

**1.1 Merchant Deposit Agreement**. Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to YSC, and appoint a Bank acceptable to YSC, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide YSC and/or its authorized agent with all of the information, authorizations and passwords necessary to verify Merchant's receivables, receipts and deposits into the account. Merchant shall authorize YSC and/or its agent to deduct the amounts owed to YSC for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to YSC by permitting YSC to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable absent YSC's written consent.

**1.2 Future Purchases**. YSC reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

**1.3 Financial Condition**. Merchant and Guarantor(s) authorize YSC and its agents to investigate their financial responsibility and history, and will provide to YSC any bank or financial statements, tax returns, etc., as YSC deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. YSC is authorized to update such information and financial profiles from time to time as it deems appropriate.

**1.4 Transactional History**. Merchant authorizes their bank to provide YSC with Merchant's banking and/or credit-card processing history to deter min e qualification or continuation in this program.

**1.5 Indemnification**. Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by YSC for monies owed to YSC from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by YSC.

**1.6 No Liability**. In no event will YSC be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or con sequential damages, each of which is waived by Merchant and Guarantor(s).

**1.7 Reliance on Terms**. Section 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, YSC and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.8 Sale of Receipts**. Merchant and YSC agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from YSC to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement equals the fair market value of such Receipts. YSC has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to YSC in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that YSC has charged or received interest hereunder in excess of the highest rate allowed by law, then the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and YSC shall promptly refund to Merchant any interest received by YSC in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that YSC not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

**1.9  Power of Attorney**. Merchant irrevocably appoints YSC as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to YSC from Processor, or in the YSCe of a violation by Merchant of Section 1.12 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to YSC; and (v) to file any claims or take any action or institute any proceeding which YSC may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.10 Protections against Default**. The following Protections 1 through 8 may be invoked by YSC, immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the YSC electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to YSC; (c) Merchant changes the electronic check processor through which the Receipts are settled from Process or to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of YSC, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to YSC; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to YSC at law, in equity or otherwise pursuant to this Agreement. **Protection 1**: The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2**. YSC may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). **Protection 3**. Merchant shall, upon execution of this Agreement, deliver to YSC an executed confession of judgment in favor of YSC in the amount of the Purchase Amount stated in the Agreement. Upon breach of any provision in this paragraph 1.11, YSC may enter that confession of judgment as a judgment with the Clerk of the Court and execute thereon. **Protection 4**. YSC may enforce its security interest in the Collateral identified in the Security Agreement herein. **Protection 5**. YSC may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which YSC shall recover judgment against Merchant, Merchant shall be liable for all of YSC's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 6**. Merchant shall, upon execution of this Agreement, deliver to YSC an executed assignment of lease of Merchant's premises in favor of YSC. Upon breach of any provision in this paragraph 1.12, YSC may exercise its rights under such assignment of lease. **Protection 7**. YSC may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the Specified Percentage. **Protection 8**. YSC shall have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor(s), to notify Merchant's credit card processor of the sale of Receipts hereunder and to direct such credit card processor to make payment to YSC of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant hereby grants to YSC an irrevocable power - of-attorney, which power- of-attorney shall be coupled with an interest, and hereby appoints YSC or any of YSC's representatives as Merchant's attorney-in -fact, to take any and all action necessary to direct such new or additional credit card processor to make payment to YSC as contemplated by this Section.

Owner Initials:_____
Owner Initials:_____

3

Rev. 1.27.16

1.11 **Protection of Information**. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes YSC to disclose information concerning Merchant's and each Owner's and/or Guarantor(s)'s credit standing and business conduct only, to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant, Guarantor(s) and Owner(s) hereby waives to the maximum extent permitted by law any claim for damages against YSC or any of its affiliates relating to any (i) investigation undertaken by or on behalf of YSC as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.12 **Confidentiality**. Merchant understands and agrees that the terms and conditions of the products and services offered by YSC, including this Agreement and any other YSC documentation s (collectively, "Confidential Information") are proprietary and confidential information of YSC. Accordingly unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of YSC to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.13.

1.13 **D/B/As**. Merchant hereby acknowledges and agrees that YSC may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between YSC and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that as of this date and during the term of this Agreement:

2.1 **Financial Condition and Financial Information**. Its bank and financial statements, copies of which have been furnished to YSC, and future statements which will be furnished hereafter at the discretion of YSC, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise YSC of any material adverse change in its financial condition, operation or ownership. YSC may request statements at any time during the performance of this Agreement and the Merchant shall provide them to YSC within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

2.2 **Governmental Approvals**. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

2.3 **Authorization**. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 **Insurance**. Merchant will maintain business-interruption insurance naming YSC as loss payee and additional insured in amounts and against risks as are satisfactory to YSC and shall provide YSC proof of such insurance upon request.

2.5 **Electronic Check Processing Agreement**. Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without YSC's prior written consent. Any such change shall be a material breach of this Agreement.

2.6 **Change of Name or Location**. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and YSC or change any of its places of business.

2.7 **Estoppel Certificate**. Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from YSC to Merchant, execute, acknowledge and deliver to YSC and/or to any other person, person firm or corporation specified by YSC, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been paid.

2.8 **Working Capital Funding**. Merchant shall not further encumber the Receipts without (i) the written consent of YSC, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to YSC; or (e) Merchant takes any action, fails to take any action, or offers any incentive— economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to YSC at law, in equity or otherwise pursuant to this Agreement. Protection 1: The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. Protection 2. YSC may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). Protection 3. Merchant shall, upon whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales, with any party other than YSC.

2.9 **Unencumbered Receipts**. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of YSC.

2.12 **Business Purpose**. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.13 **Defaults under Other Contracts**. Merchant's execution of and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

## III. EVENTS OF DEFAULT AND REMEDIES

3.1 **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) the sending of notice of termination by Guarantor(s) prior to the Purchased Amount being paid to YSC; (d) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (e) Merchant shall transfer or sell all or substantially all of its assets; (f) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (g) Merchant shall use multiple depository accounts without the prior written consent of YSC; (h) Merchant shall change its depositing account without the prior written consent of YSC; (i) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (j) Merchant shall default under any of the terms, covenants and conditions of any other agreement with YSC; or (k) Merchant shall fail to deposit its Receipts into the Account.

3.2 **Remedies.** In YSCe any Event of Default occurs and is not waived pursuant to Section 4.4 hereof, YSC may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights,

Owner Initials:_____
Owner Initials:_____

4

Rev. 1.27.16

powers and remedies of YSC in connection with this Agreement may be exercised at any time by YSC after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3 **Costs.** Merchant shall pay to YSC all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of YSC's remedies set forth herein, including but not limited to court costs and attorneys' fees.

3.4 **Required Notifications.** Merchant is required to give YSC written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give YSC seven (7) days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## IV. MISCELLANEOUS

4.1 **Modifications; Agreements**. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

4.2 **Assignment**. YSC may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part without prior notice to the Merchant.

4.3 **Notices**. All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 **Waiver Remedies**. No failure on the part of YSC to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 **Binding Effect; Governing Law, Venue and Jurisdiction**. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of YSC which consent may be withheld in YSC's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if YSC so elects, be instituted in any court sitting in New York State, (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

4.6 **Survival of Representation, etc**. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.7 **Severability**. In YSCe any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality an d enforceability of any other provision contained herein shall not in any way be affected or impair ed.

4.8 **Entire Agreement**. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereto embody the entire agreement between Merchant and YSC and supersede all prior agreements and understandings relating to the subject matter hereof.

4.9 **JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.**

4.10 **CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.**

4.11 **SERVICE OF PROCESS. IN ADDITION TO THE METHODS OF SERVICE ALLOWED BY THE NEW YORK STATE CIVIL PRACTICE LAW & RULES ("CPLR"), MERCHANT HEREBY CONSENTS TO SERVICE OF PROCESS UPON IT BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED. SERVICE HEREUNDER SHALL BE COMPLETE UPON MERCHANT'S ACTUAL RECEIPT OF PROCESS OR UPON YSC'S RECEIPT OF THE RETURN THEREOF BY THE UNITED STATES POSTAL SERVICE AS REFUSED OR UNDELIVERABLE. MERCHANT MUST PROMPTLY NOTIFY YSC, IN WRITING, OF EACH AND EVERY CHANGE OF ADDRESS TO WHICH SERVICE OF PROCESS CAN BE MADE. SERVICE BY YSC TO THE LAST KNOWN ADDRESS SHALL BE SUFFICIENT. MERCHANT WILL HAVE THIRTY (30) CALENDAR DAYS AFTER SERVICE HEREUNDER IS COMPLETE IN WHICH TO RESPOND. FURTHERMORE, MERCHANT EXPRESSLY CONSENTS THAT ANY AND ALL NOTICE(S), DEMAND(S), REQUEST(S) OR OTHER COMMUNICATION(S) UNDER AND PURSUANT TO THIS MERCHANT AGREEMENT SHALL BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF THIS MERCHANT AGREEMENT.**

4.12 **Facsimile Acceptance**. Facsimile signatures and/or via Portable Digital Format (PDF) shall be deemed acceptable for all purposes.

4.13 **Arbitration.** If Purchaser, Merchant or any Guarantor requests, the other parties agree to arbitrate all disputes and claims arising out of or relating to the Agreement. If Purchaser, Merchant or any Guarantor seeks to have a dispute settled by arbitration, that party must first send to the other party, by certified mail, a written Notice of Intent to Arbitrate. If Purchaser, Merchant or any Guarantor do not reach an agreement to resolve the claim within 30 days after the Notice is received, Purchaser, Merchant or any Guarantor may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Purchaser will promptly reimburse Merchant or the Guarantor any arbitration filing fee; however, in the event that both Merchant and the Guarantor must pay filing fees, Purchaser will only reimburse Merchant's arbitration filing fee and, except as provided in the next sentence, Purchaser will pay all administration and arbitrator fees. If the arbitrator finds that either the substance of the claim raised by Merchant or the Guarantor or the relief sought by Merchant or the Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Civil Procedure 11(b), then Purchaser will pay these fees only if required by the AAA Rules. If the arbitrator grants relief to Merchant or the Guarantor that is equal to or greater than the value of what Merchant or the Guarantor has requested in the arbitration, Purchaser shall reimburse Merchant or the Guarantor for that person's reasonable attorneys' fees and expenses incurred for the arbitration. Merchant and the Guarantor agree that, by entering into this Agreement, they are waiving the right to trial by jury. PURCHASER, MERCHANT AND ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, Purchaser, Merchant and any Guarantor agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. MERCHANT AND ANY GUARANTOR MAY OPT OUT OF THIS CLAUSE. To opt out of this Arbitration Clause, Merchant and/or Guarantor may send Purchaser a notice that the Merchant or Guarantor does not want this clause to apply to this Agreement. For any opt out to be effective, Merchant and/or Guarantor must send an opt out notice to the following address by registered mail, within 14 days after the date of this Agreement: One Evertrust Plaza, 14th Floor, Jersey City, New Jersey 07302.

Owner Initials:_____
Owner Initials:_____

## SECURITY AGREEMENT AND GUARANTY

Merchant Legal Name:   GRANITE ENTERPRISES, LLC

D/B/A:   GRANITE ENTERPRISES

Check One:   Corporation ☐   LLC ☐   LP ■   LLP ☐   Sole Prop ☐      EIN #: 80-0847135

Physical Address:   5543 EDMONDSON PIKE, NASHVILLE, TN 37211

Mailing Address:   5543 EDMONDSON PIKE, NASHVILLE, TN 37211

### I. SECURITY AGREEMENT

**Security Interest**. To secure Merchant's payment and performance obligations to YSC under the Merchant Agreement, Merchant hereby grants to YSC a security interest in all assets now owned, or hereafter acquired, including without limitation: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC ("a" and "b" collectively, the "Collateral").

**Cross-Collateral**. To secure Merchant's and Guarantor's performance of their obligations to YSC under this Security Agreement and Guaranty (the "Agreement"), Merchant and/or Guarantor hereby grants YSC an additional security interest in:

(the "Additional Collateral"). Guarantor(s) understands that YSC will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement. Merchant and Guarantor each acknowledge and agree that any security interest granted to YSC under any other agreement between Merchant or Guarantor and YSC (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as YSC deems necessary to perfect or maintain YSC's first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes YSC to file any financing statements deemed necessary by YSC to perfect or maintain YSC's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to YSC with respect to the Collateral, the Additional Collateral and the Cross- Collateral, and that any subsequent lien or may be tortiously interfering with YSC's rights. Merchant and Guarantor shall be liable for and YSC may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by YSC in protecting, preserving and enforcing YSC's security interest and rights. Merchant further acknowledges that YSC may use another legal name and/or D/B/A when designating the Secured Party, when YSC files the above-referenced financing statement(s).

**Negative Pledge**. Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

**Consent to Enter Premises and Assign Lease**. YSC shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, YSC may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that YSC may enter into an agreement with Merchant's landlord giving YSC the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

**Remedies**. Upon any Event of Default, YSC may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

### II. GUARANTY

**Personal Guaranty of Performance**. The undersigned Guarantor(s) hereby guarantees to YSC, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Agreement and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) at the time Merchant admits its inability to pay its debts, or makes a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts.

**Guarantor Waivers**. In the event that Merchant fails to deliver the receivables purchased hereunder or perform any obligation when due under the Merchant Agreement, YSC may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross- Collateral YSC may hold pursuant to this Agreement or any other guaranty. YSC does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to timely perform any obligation under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) YSC's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to YSC. In addition, YSC may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to YSC; (ii) release Merchant from its obligations to YSC; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to YSC under the Merchant Agreement and this Agreement are satisfied in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation ; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that YSC must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations

Owner Initials:_____
Owner Initials:_____

6

because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

      **IN WITNESS WHEREOF, the parties have executed this Security Agreement and Guaranty as of the date first written above:**

| FOR THE MERCHANT #1 | OWNER/GUARANTOR #1 |
|---|---|
| By:_____ | By:_____ |
| Name: CRAIG CUNNINGHAM | Name: |
| Title: OWNER | SSN: |
| SSN: ■■■-5558 | |

| FOR THE MERCHANT #2 | OWNER/GUARANTOR #2 |
|---|---|
| By:_____ | By:_____ |
| Name: | Name: |
| Title: | SSN: |
| SSN: | |

**AGREED AND ACCEPTED:**

**YELLOWSTONE CAPITAL LLC**

**BY:**_____
**NAME:**
**TITLE:**

Owner Initials:_____
Owner Initials:_____

7

## APPENDIX A – FEE STRUCTURE

    A. **Origination Fee:** **$295.00** (to cover underwriting and related expenses).
    B. **ACH Program Fee:** **$395.00 or up to 10% of the funded amount** (the ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs).
    C. **Bank Fee:** Minimum bank fee of $195.00 or up to 10% of the funded amount.
    D. **NSF Fee:** **$35.00 each occurrence** (up to two occurrences before a default is declared).
    E. **Rejected ACH:** **$100.00** (if a merchant directs the bank to reject our debit ACH).
    F. **Bank Change Fee:** **$50.00** (If a merchant requires a change of account to be debited requiring us to adjust our system).
    G. **Unauthorized Account Fee:** **$5,000.00** (if a merchant blocks YSC's ACH debit of the Account, bounces more than 4 debits of the Account, or simultaneously uses multiple bank accounts or credit-card processors to process its receipts).
    H. **Default Fee:** **$2,500.00** (if a merchant changes bank accounts or switches to another credit- card processor without YSC's consent, or commits another default pursuant to the Agreement).
    I. **Miscellaneous Service Fees**: Merchant shall pay certain fees for services related to the origination and maintenance of accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire or $0.00 for a bank ACH.
    J. **Risk Assessment Fee:** **$249.00**
    K. **UCC Fee:** **$195.00**

**FOR THE MERCHANT #1**

By: _____
Name:  CRAIG CUNNINGHAM
Title:   OWNER
SSN:
        ▮▮▮▮▮-5558

**FOR THE MERCHANT #2**

By: _____
Name:
Title:
SSN:

Owner Initials:_____
Owner Initials:_____

8

Rev. 1.27.16

# ACH Authorization Form
All information on this form is required unless otherwise noted.

**Business Authorized to Debit/Credit Account:**

Yellowstone Capital, LLC
Authorized Business Name

1-800-955-2411
Authorized Business Phone Number

160 Pearl Street, 5th Floor
Authorized Business Address

New York          NY       10005
City              ST       Zip

**Account Holder Information:**

CRAIG CUNNINGHAM
Account Holder Name

GRANITE ENTERPRISES
Account Holder DBA Name (If Business Account)

_____
Account Holder Phone

5543 EDMONDSON PIKE, NASHVILLE, TN 37211
Account Holder Address

**Account Holder's Bank Information:**

_____
Account Holder's Bank Name

_____
Branch City          ST      Zip

How to find your Routing and Account Numbers on a check:

☐ Business Checking
☐ Personal Checking
☐ Savings

_____
Bank Routing Number (9 digits)

_____
Bank Account Number

**Transaction Information:**

Professional Service Fee
Goods Purchased/Services Rendered

✓ One-time      ☐ Recurring

Rate MARCH 11, 2016

$599.00
Amount of Transaction

MARCH 11, 2016
Effective Date

No. of Transactions _____ or Open Ended ☐

**Authorization:**

In exchange for products and/or services listed above the undersigned hereby authorizes:

Yellowstone Capital, LLC

to electronically draft via the Automated Clearing House system the amounts indicated above from the account identified above. This authority will continue until withdrawn in writing by the undersigned account holder. The Undersigned hereby certifies that they are duly authorized to execute this form on behalf of the above listed account holder. I acknowledge that I am subject to a $25 reject fee if items are returned for insufficient funds.

_____
Signature of Account Holder

CRAIG CUNNINGHAM
Name/Title of Account Holder

MARCH 11, 2016
Date

ACH Processing Provided By



FirstACH
The First Choice in ACH Business Solutions.

www.firstach.com

Better payments.

# ADDENDUM TO SECURED MERCHANT AGREEMENT

This Addendum is entered into a **11TH** day of **MARCH**, 2016, by and between YELLOWSTONE CAPITAL, LLC ("Yellowstone") and **GRANITE ENTERPRISES** (the "Merchant").

1. Should any of the terms of this Addendum conflict with the terms of the agreement between Yellowstone and the Merchant dated **MARCH 11, 201** (the "Agreement"), then the terms of this Addendum shall govern and be controlling. Capitalized terms used herein but otherwise not defined, shall have the same definition as in the Agreement:

   a. By signing below, the Merchant hereby requests and acknowledges that the Specified Percentage shall be revised to $ **157.12** per business day (the "Daily Payment") which the parties agree is a good-faith approximation of the Specified Percentage, based on the Merchant's receipts due to Yellowstone pursuant the Agreement.

   b. The Daily Payment is to be drawn via ACH payment, from the following bank account, or if no account information is specified, to the account information contained in the accompanying voided check:

   i.   Bank Account:      X_____
   ii.  Routing Number:    X_____
   iii. Account Name:      X_____
   iv.  Bank Name:         X_____

   c. At the Merchant's option, within three (3) days following the end of a calendar month, the Merchant may request a reconciliation to take place, whereby Yellowstone may ensure that the cumulative amount remitted for the subject month via the Daily Payment is equal to the amount of the Specified Percentage. However, in order to effectuate this reconciliation, upon submitting the request for reconciliation to Yellowstone – but in no event later than three (3) days following the end of the calendar month – the Merchant must produce any and all evidence and documentation requested by Yellowstone in its sole and absolute discretion, necessary to identify the appropriate amount of the Specified Percentage. The foregoing includes without limitation, any and all bank statements, merchant statements or other documents necessary to ascertain the amounts of the Specified Percentage, including login to the Merchant's bank account(s).

   d. The Merchant specifically acknowledges that: (i) the Daily Payment and the potential reconciliation discussed above are being provided to the Merchant as a courtesy, and that Yellowstone is under no obligation to provide same, and (ii) if the Merchant fails to furnish the requested documentation within three (3) days following the end of a calendar month, then Yellowstone shall not effectuate the reconciliation discussed above.

   IN WITNESS WHEREOF, the parties have executed this Addendum to the Agreement as of the date first set forth above.

FOR THE MERCHANT #1:                       YELLOWSTONE CAPITAL LLC
By: X_____              By:_____
Signature:_____

FOR THE MERCHANT #2:
By:_____
Signature:_____

Rev. 1.4.16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

YELLOWSTONE CAPTIAL, LLC,

                    Plaintiff,

-against-

GRANITE ENTERPRISES,LLC DBA GRANITE ENTERPRISES and CRAIG CUNNINGHAM,

                    Defendants.

Index No.

**AFFIDAVIT OF CONFESSION OF JUDGMENT**

STATE OF TN      )
                             )  ss.:
COUNTY OF       )

CRAIG CUNNINGHAM, being duly sworn, deposes and says:

1. I am a principal, owner, and an officer of GRANITE ENTERPRISES,LLC DBA GRANITE ENTERPRISES ("Merchant Defendant"), a limited liability company located at 5543 EDMONDSON PIKE, NASHVILLE, TN 37211, in the County of         , and as such, I have the authority to act on behalf of Merchant Defendant.

2. I reside at 5543 EDMONDSON PIKE, NASHVILLE, TN 37211, in the County of         .

3. I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

4. Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of New York, Supreme Court of the State of New York, County of Westchester, and/or Civil Court of the City of New York, County of New York, in the sum of $10,213.00 less any payments timely made pursuant to the

secured Merchant Agreement dated March 11, 2016, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 16% per annum from March 11, 2016, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

5. In addition, I hereby confess judgment, individually and personally, jointly and severally, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the Southern District of New York, Supreme Court of the State of New York, County of New York, Supreme Court of the State of New York, County of Westchester, and/or Civil Court of the City of New York, County of New York, against me personally in the sum of $10,213.00 less any payments timely made pursuant to the Merchant Agreement dated March 11, 2016, plus legal fees to Plaintiff calculated at twenty five percent (25%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 16% per annum from March 11, 2016, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6. This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated March 11, 2016, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the

secured Merchant Agreement, dated March 11, 2016, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

7.      Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, which reserves all of its rights and remedies against Defendants.

8.      If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

9.      I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this _____ day of _____, 2016.

By:_____
CRAIG CUNNINGHAM, individually, and on behalf of GRANITE ENTERPRISES,LLC DBA GRANITE ENTERPRISES

Sworn to before me this
_____ day of _____, 2016.

_____
        Notary Public

3



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.